## RADFORD et al. v. RADFORD et al.
### No. 4436.

Court of Civil Appeals of Texas. Texarkana.

March 28, 1934.

Rehearing Denied April 5, 1934.

Clark & Clark and Karsten & Lopp, all of Fort Worth, Wm. F. Collins, of Oklahoma City, Okl., and Tom Bartlett, of Marlin, for appellants.

Walace Hawkins and Turner, Rodgers & Winn, all of Dallas, Wynne & Wynne, Campbell, Leak, Taylor & Storey, and W. Edward Lee, all of Longview, McGee & Head, of Kilgore, and Clay Tallman and L. A. Thompson, Jr., both of Tulsa, Okl., for appellees.

SELLERS, Justice.

There were the two suits in trespass to try title and to remove cloud from title and which were by order of the court consolidated and tried together. The appellants in this appeal were the plaintiffs in one of the cases. The controversy in the two cases was over the title respectively to 119½ acres and to 90½ acres adjoining the 119½ acres on the west in the John Blair survey in Gregg county. Upon the trial of the causes on the merits, a peremptory instruction was given to the jury to return a verdict as directed respecting the 90½ acres. And in keeping with the answers of the jury on the issues submitted, a judgment was entered as to the 119½ acres in favor of the defendants and against the plaintiffs, who are the appellants. Since the judgment, there has been agreed settlement between the parties as to the 90½ acres, and it becomes unnecessary to make statement concerning that branch of the original litigation. There is involved in this appeal only 119½ acres in original controversy.

The suit, as tried and as pleaded, is one of trespass to try title. The appellants claim an undivided interest in the 119½ acres of land as children and heirs of Ann Radford, deceased, who died intestate. Appellants L. D. Radford, Oliver Radford, Ora Johnson (née Radford), and Mattie Erwin (née Radford) are surviving children of Ann Radford, and the appellants Madison Radford and Garrett Radford are the surviving children of Charles Radford, deceased, who was a son of Ann Radford. Ann Radford died October 1, 1913, and her husband, who was Madison Radford, died in 1888.

The appellees, excepting the holders of oil leases, are the widow and the eleven children of Monroe Radford, who is a son of Ann Radford, and is the brother and uncle of appellants. Monroe Radford died intestate on December 12, 1929.

It appears from the evidence that Ann Radford and her husband moved on the C. W. Hughey farm, which included the land in this appeal before the death of the husband in 1888. At the time Monroe Radford was unmarried, and, inferably, was at school elsewhere and not with the family. Some several years before 1902, the exact date not stated, Monroe Radford married Barkie, and thereafter Monroe Radford continuously resided on the Hughey land. It was proven that prior to the death of C. W. Hughey on December 10, 1899, he had agreed to sell "to them," presumably meaning Ann Radford and Monroe Radford, in equal shares, the tract of land on which they were living. C. W. Hughey, an unmarried adult, just before

his death, told his brother John F. Hughey that he had agreed to sell the land to them, and that they had "paid some on it and they still owed some on it." The date of the agreement of sale does not appear. In furtherance of the agreement of sale made by his brother, C. W. Hughey, and on December 21, 1899, after the death of C. W. Hughey, on December 10, 1899, John F. Hughey executed a bond for title, in substance that upon payment by M. R. (Monroe) Radford of two notes each for $150 due November, 1900, and 1901, respectively, a conveyance in fee simple would be executed to "264 acres of land, more or less, being the East End, and one half of the land herein described, of the John Blair H. R. Survey (here follows description) less 25 acres out of the S. E. Corner of the above described' tract, and less any tract heretofore sold out of the said tract by C. W. Hughey." It seems that the mother of C. W. Hughey agreed to convey to John F. Hughey the land of C. W. Hughey, which she inherited as heir, and a conveyance was duly made to John F. Hughey in September, 1900, of the interest in the land of which C. W. Hughey died seized. John F. Hughey thereafter on October 25, 1901, duly executed and delivered to each Ann Radford, and M. R. (Monroe) Radford, a general warranty deed. The deed to Ann Radford recited the consideration of $341.80 paid, and secured to be paid "by Ann Radford" and conveyed to her all that certain tract, lot, or parcel of land described as follows: "Situated in Gregg County, about 10 miles West from the town of Longview, on the South side of Sabine River, and being a part of the John Blair H. R. Survey, beginning (here follows description), containing 264 acres of land, save and except 25 acres in the South East corner of said tract, and save and except the land heretofore sold to H. T. Elder by C. W. Hughey out of said tract." This deed was registered March 27, 1906. The deed to Monroe Radford recited the consideration of $337.75 paid and secured to be paid by "M. R. Radford" and conveyed to him "All that tract or parcel of land, described as follows: Being the East one half of the following tract, situated in Gregg County, Texas, about 10 miles West from the town of Longview, on the South side of Sabine River, and being a part of the John Blair H. R. Survey, beginning" (here follows description). There is no proof of what land was covered by the previous conveyances mentioned in the exception mentioned in the deeds. The exact quantity is not made known. Ann Radford and Monroe R. Radford each appeared to

have thought, as the circumstances tend to show, that the land actually conveyed to them was about 90½ acres to each of them. Ann Radford and children occupied the 90½ acres as the west one-half of the tract, and Monroe R. Radford occupied the east 90½ acres. In December, 1902, Ann Radford and her children moved to a farm owned by Mr. Killingsworth. She stayed there throughout the year 1903, and in 1904 moved to an adjoining farm. In 1905 moved to Gladewater, and from there to Kaufman, and from there in 1908 to Corsicana where she died on October 1, 1913. Monroe R. Radford built in 1905 a new dwelling on the 90½-acre tract, and moved into it and resided there with his family until his death. The land surveys out in fact 119½ acres.

The widow and children of Monroe R. Radford executed oil leases on the tract of land to the several defendants named in the suit. John F. Hughey, as warrantor in the deed, is made a defendant.

The following special issues were submitted to the jury:

"No. 1: Do you find from a preponderance of the evidence that Monroe Radford and those claiming under him have held peaceable and adverse possession of the East 119½ acres of the land in controversy, cultivating, using or enjoying the same and paying taxes thereon and claiming under a deed or deeds duly registered for any period of five consecutive years after April 18th, 1913, and before June 1st, 1932?"

Answer: "Yes."

"No. 2: Do you find from a preponderance of the evidence that Monroe Radford and those claiming under him have been in peaceable adverse possession of the East 119½ acres of the land in controversy, using, cultivating or enjoying the same for any period of ten (10) years before June, 1, 1932?"

Answer: "Yes."

"No. 3: Do you find from a preponderance of the evidence that Monroe Radford, and those claiming under him, have been in peaceable and adverse possession of the East 119½ acres of the land in controversy, using, cultivating or enjoying the same for a period of twenty-five (25) years before June 1, 1932?"

Answer: "Yes."

"No. 4: Do you find from a preponderance of the evidence that J. F. Hughey, by his deed of October 25, 1901, to Anne Radford, intended to convey only the West one-half (½) of the land in controversy?"

944

Answer: "Yes."

"No. 5: Do you find from a preponderance of the evidence that Anne Radford, by the deed of October 25, 1901, from J. F. Hughey, intended to purchase only the West one-half (½) of the land in controversy?"

Answer: "Yes."

"No. 6: Did such ten year period expire before October 1st, 1913?"

Answer: "Yes."

"No. 7: Were the acts of peaceable adverse possession of Monroe Radford and those claiming under him, inquired about in Special Issue No. 2, (provided, of course, you have answered Special Issue No. 2 'yes') after October 1st, 1913, for any period of ten years before June 1st, 1932, such as, under the facts and circumstances in evidence, to put the plaintiffs on notice that the said Monroe Radford and those claiming under him were claiming the land adversely?"

Answer: "Yes."

There is evidence to warrant the finding of the jury, and they are here adopted as the facts in the appeal.

The appellants present the point and urge the theory of the case, that Ann Radford was the owner of the 119½ acres by oral purchase and by deed, and Monroe R. Radford to the death of Ann Radford was only a tenant paying her rent, and after the death of Ann Radford that Monroe R. Radford was a tenant in common with the appellants. It is believed upon a careful consideration of the evidence and the pleading the conclusion is warranted that the trial court has correctly tried the case. It is thought the matters to be ultimately determined in the trial of the case, were matters involved in the very issues submitted to the jury. The issues and instructions to the jury were correctly given, and there was no error in respect thereto. In that view, then, attaching the proper legal effect to the facts established by the verdict of the jury, there was definitely fixed a right in the appellees to a judgment in their favor against the appellants. In view of the verdict and the legal effect thereof, affirmance of the judgment in the case must necessarily follow. The appellants in the brief have very clearly presented the appeal, and we have duly considered all the assignments of error. The above-stated view of the case settles the appeal and further statement would be unnecessary.

The several assignments of errors based upon the ruling of the court in admitting and refusing to admit certain evidence may not be sustained and they are each overruled.

We have reached the conclusion that the judgment as to the 119½ acres should be affirmed, and it is accordingly so ordered. The judgment as to the 90½ acres is affirmed in accordance with the agreement of the parties.

After the former judgment of affirmance and the *opinion therein rendered* were vacated and set aside, the majority of this court have reached a conclusion of this appeal, Associate Justice LEVY disqualified and not sitting. The majority of the court then now orders the affirmance of the judgment effective on and from this day of March 15, 1934. The former opinion was participated in by the members of the court now deciding the appeal, and we here adopt such opinion as the present opinion of the majority of the court independently of the former decision.

JOHNSON,
Chief Justice.
GROVER SELLERS,
Associate Justice.